USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LI WENG, et al.,

        Plaintiffs,

-against-

T&W RESTAURANT, INC., et al.,

        Defendants.

15-CV-08167 (PAE) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Before the Court is a proposed settlement in this Fair Labor Standards Act (FLSA) action brought by nine current and former delivery workers for Shun Lee West Restaurant in Manhattan. Plaintiffs allege that defendants T&W Restaurant, Inc., T&W Payroll Services, Inc. d/b/a Shun Lee West, Michael Tong, and Ren Li Tang violated the minimum wage, overtime, spread-of-hours, and payroll notice provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law (NYLL) §§ 650 *et seq. See* Am. Compl. (Dkt. No. 19) ¶¶ 1-4, 7-29.

On March 30, 2016, the Hon. Paul A. Engelmayer issued an order (Dkt. No. 28) deferring any motion for conditional collective action certification until the parties conducted a judicially-supervised settlement conference and directing defendants to produce certain wage and hour records to plaintiffs prior to that conference. On April 15, 2016, the parties conducted a settlement conference before me, after which they informed me that they had reached a settlement; consented to my jurisdiction for all purposes under 28 U.S.C. § 636(c) (Dkt. No. 35); and submitted a joint motion (Dkt. No. 33) for approval of their written settlement agreement (Agreement), which they included as an attachment. (Dkt. No. 33-1.)

The Agreement requires defendants to pay a total of $230,000, with $152,934 (66.5%) to be divided among the plaintiffs, and $77,066 (33.5%) to be paid to plaintiffs' counsel. Of the $152,934 going to the plaintiffs themselves, the Agreement allocates $29,469 to plaintiff Li Weng; $34,843 to plaintiff Li Jun Dai; $35,673 to plaintiff Hong Chen; $30,086 to plaintiff Xia Fang Xu; $2,132 to plaintiff Zhi You Wang; $1,066 to plaintiff Jian Ying; $2,972 to plaintiff Guang Ming Cha; $16,197 to plaintiff Ren Li Tang; and $496 to plaintiff Wen Bao Wang. The Agreement also contains a non-disparagement clause and mutual general releases.

Settlements that dismiss FLSA claims with prejudice require approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). Before a district court enters judgment in such a case, it must scrutinize the settlement to determine that it is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In making that determination, the court must consider the totality of circumstances,

> including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Id.* (citing *Medley v. Am. Cancer Soc.*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

After careful consideration of the parties' submissions, I conclude that I cannot approve the Agreement in its current form, for two reasons: first, the parties failed to provide the Court with sufficient information regarding the basis for what appears to be a disproportionate distribution of settlement funds among the plaintiffs; and second, the Agreement contains an overbroad non-disparagement clause.

I.  **Negotiations**

Having supervised the April 15, 2016 settlement conference attended by the parties and their counsel, and having reviewed the parties' confidential *ex parte* letters prior to that conference, as well as the filings and procedural history of the case, I am satisfied with the fairness of the negotiations leading up to the settlement. Plaintiffs and defendants were represented by competent and experienced counsel who advocated forcefully for their respective clients and negotiated vigorously and at arms' length. The fourth and fifth *Wolinsky* factors therefore weigh in favor of judicial approval of the Agreement.

II.  **Financial Terms**

   a.  **Aggregate Settlement Payment to Plaintiffs**

I am also satisfied, broadly, with the fairness of the aggregate payment to the plaintiffs. Their overall recovery under the Agreement (net of payments to their counsel) is $152,934, which appears fair and reasonable when considered in light of the range of damages that plaintiffs could reasonably hope to recover at trial, as well as the substantial litigation risks they would face in seeking that recovery.

Although neither the Amended Complaint nor the parties' joint motion spells out the damages sought by plaintiffs, the confidential materials submitted for use at the settlement conference included each side's settlement position, backed up with underlying calculations. The calculations were predicated on a number of contested assumptions including, most significantly, the applicable minimum wage rate. The parties disputed whether plaintiffs – who all received tips in addition to their wages – were entitled to the full minimum wage (which ranged from $7.25 to $9.00 per hour during the relevant period) or "tipped minimum wage" (which ranged from $4.90 to $7.50 per hour during the same period). The documentary evidence presented during the

settlement conference suggested that defendants were likely to prevail on this issue. The parties also disputed the number of hours actually worked by the plaintiffs. In this case, however – unlike many FLSA cases – defendants kept contemporaneous records of each plaintiff's work hours. Given the significance of the tip credit issue, the strength of the evidence concerning that issue, and the existence of contemporaneous time records corroborating the employer's wage calculations, I conclude that the aggregate payment to the plaintiffs is fair. The first and third *Wolinsky* factors therefore weigh in favor of judicial approval of the Agreement.

By settling at this juncture, moreover, both sides avoid significant attorneys' fees and other expenses that would be incurred during the discovery and collective action certification process. The second *Wolinsky* factor therefore militates in favor of approval as well. *See* Opinion & Order, *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, slip op. at 5-6 (S.D.N.Y. June 20, 2016). Given those factors, the overall settlement payment to the plaintiffs is reasonable.

### b. Distribution of Settlement Funds Among Plaintiffs

However, the Court is unable to determine, based on the information submitted to date, whether the distribution of settlement funds among the nine plaintiffs is fair and reasonable. While both sides provided the Court with individualized calculations of each plaintiff's potential damages for use at the settlement conference, the distribution of the settlement among those plaintiffs under the Agreement does not appear to correspond proportionally to any of the estimates previously presented. Without more explanation for the distribution of funds, I cannot approve the Agreement. *See Pena v. San Miguel Transp., Inc.*, 2015 WL 1938144, at *1 (S.D.N.Y. Apr. 7, 2015) (rejecting FLSA settlement agreement in part because of the "dearth of information supplied by the parties" as to, among other things, the allocation of 75% of the settlement amount to one plaintiff and 25% to the other).

### c. Attorneys' Fees and Costs

I must also analyze the Agreement's attorneys' fee provision. "In an individual [non-class] FLSA action where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees." *Wolinsky*, 900 F. Supp. 2d at 336 (citations omitted). Nonetheless, the reviewing court must carefully analyze the agreement in order to ensure that "the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Id.* (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997); *accord Encalada v. Baybridge Enterprises Ltd.*, 2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014) (explaining that when all parties are satisfied with the settlement, "the Court's primary function is to make sure that some of the plaintiff's recovery has not been unreasonably diverted to pay his attorney a greater fee than that to which he is entitled").

A court evaluating attorneys' fees in an FLSA settlement may use either the "lodestar" method or the "percentage of the fund" method, but should be guided in any event by factors including: "(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations." *Lopez v. Ploy Dee, Inc.*, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).[1] Under the "percentage of the fund" method, attorneys' fee awards of one third or less of the total settlement amount are generally accepted in this District, if no other factors suggest that such a fee is unreasonable. *See, e.g., Zhang v. Lin Kumo Japanese Rest., Inc.*, 2015 WL 5122530, at *4

---

[1] A court using a lodestar analysis calculates a "presumptively reasonable attorney fee" by multiplying the number of hours reasonably billed in a matter by an appropriate hourly rate. *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 20-21 (S.D.N.Y. 2015).

(S.D.N.Y. Aug. 31, 2015) (reducing fee award from 37% to 33% in FLSA settlement); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases); *cf. Trinidad v Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) (reducing fee award from 33% of a "relatively modest" gross settlement amount obtained for a class of over 4,000 members to 25% of the net settlement).

The Agreement before me provides for an award of $77,066 to be paid to plaintiffs' counsel for fees and costs, which – at 33.5% of $230,000 – slightly exceeds one third of the gross settlement amount. The Court's May 2, 2016 order (Dkt. No. 32) directed the parties, should their agreement contemplate attorneys' fees in excess of one third of the total settlement amount, to provide a detailed explanation and attach counsel's time and expense records. No time and expense records were submitted, nor do the parties otherwise explain the amount going to plaintiffs' attorneys, except to suggest that any amount over one third must be a "disbursement." Joint Mtn. ¶ 12. In the absence of any further explanation of the sum going to counsel, the Court cannot approve an award higher than one third of the gross settlement payment, which would be $76,667.

A "percentage of fund" contingency fee agreement can encourage early settlement of a case, which may, in turn, result in a higher award for counsel than they would achieve under a lodestar analysis. This is not inherently unfair, however, so long as the fee otherwise falls within an acceptable range. *See Lopez v. Poko-St. Ann L.P.*, 2016 WL 1319088, at *2 (S.D.N.Y. Apr. 4, 2016) (recognizing the positive aspects of contingency fee arrangements, but rejecting FLSA settlement agreement that awarded fees of over 40% of the gross settlement amount); *cf. Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. 2015) (ordering counsel to return part of a 33.3% contingency fee, given that half of counsel's time on the case was spent seeking court's approval of the FLSA settlement after defendants had already made their settlement payment, but

noting that "awarding fees based on a percentage of the settlement is appropriate in some cases"). The amount to be paid to plaintiffs' counsel here, as (slightly) modified by the Court, falls within the acceptable range. However, because I must ensure that the fee award does not come at the expense of any individual plaintiff's fair settlement, I decline to approve the award of attorneys' fees, even as modified, without more information about the basis for each plaintiff's share of the settlement amount, as discussed above.

### III.  Overbroad Non-Disparagement Clause

The Agreement also contains a one-way non-disparagement provision that bars plaintiffs, but not defendants, from

> mak[ing], or caus[ing] to be made, any critical, derogatory, disparaging, defamatory or untruthful statements about Defendants or any of the Releasees . . . to any of Defendants' past, present, or future customers, competitors, employees, or to any other person (including, but not limited to, their employers, the press or other media).

Ag. ¶¶ 5, 9. The non-disparagement clause contains an exception for "filing a charge or participating in any investigation or proceeding conducted by the United States Equal Employment Opportunity Commission [(EEOC)], National Labor Relations Board [(NLRB)], or any other government agency charged with enforcement of any law," but no exception for other statements that, while unflattering, happen to be true. To the contrary: the language of the Agreement, which broadly bars "critical," "derogatory," or "disparaging" comments, could prevent the settling plaintiffs from making truthful statements to others regarding the facts underlying their claims or the litigation of this case.

Confidentiality clauses are contrary to public policy and the remedial purposes of the FLSA because they "prevent the spread of information about FLSA actions to other workers . . . who [could] then use that information to vindicate their own statutory rights." *Lopez*, 2016 WL

1626631, at *3. Non-disparagement clauses, although typically more limited than confidentiality clauses, can be objectionable in FLSA cases for the same reasons. *Id.* While "not every non-disparagement clause in an FLSA settlement is *per se* objectionable," a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [his] case." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015); *accord Lopez*, 2016 WL 1626631, at *3 (rejecting non-disparagement clause that lacked carve-out for truthful statements). *Cf. Cortes*, slip op. at 8 (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The non-disparagement clause in the Agreement contains no such carve-out, and therefore is contrary to the public policy concerns underlying the FLSA. Moreover, prohibiting plaintiffs from speaking about the facts underlying the case would not resolve any "bona fide dispute between the parties." *Camacho v. Ess-A-Bagel, Inc.*, 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)). Instead, it would "silenc[e] the employee[s] who ha[ve] vindicated a disputed FLSA right," and thereby "thwart[] Congress's intent to ensure widespread compliance with [the FLSA]." *Camacho*, 2015 WL 129723, at *2. Consequently, I will not approve the Agreement in its current form.

### IV. Mutual General Releases

The Agreement also contains mutual general releases. Plaintiffs waive, with limited exceptions, "all possible complaints, causes of action, liabilities, obligations, demands, contract rights, and claims against Defendants . . . that may have arisen from the beginning of time through

the effective date of [the] Agreement." Ag. ¶ 3(a). [2] Similarly, defendants waive "all actions, charges, complaints, controversies, demands, causes of action, suits and/or claims, that Defendants have or may have against Plaintiffs as of the date the Agreement is signed on behalf of Defendants." *Id.* ¶ 3(b).

"Courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Martinez v. Gulluoglu*, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez*, 96 F. Supp. 3d at 181). A number of judges in this District refuse to approve any FLSA settlement unless the release provisions are "limited to the claims at issue in this action." *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (collecting cases). Judicial disfavor of broad releases is especially pronounced, however, where "the releases were not mutual and protected only the defendants." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, J.).

This case involves mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement is signed. Moreover, while this case was filed on behalf of the named plaintiffs and "all other employees similarly situated," Am. Compl. at 1, no motion for class or collective action certification was ever filed. The Agreement, by its express terms, binds only

---

[2] Plaintiff Xu's claim for workers' compensation, which is currently before the New York State Workers' Compensation Board, is excluded from the release. *See id.* As noted above, the Agreement also permits plaintiffs to file charges with, or participate in proceedings conducted by, the EEOC, NLRB, or any other government enforcement agency, but it states that they waive any right to recover monetary damages or other relief personal to plaintiffs in such a claim or proceeding. *See id.* ¶ 5.

the nine named plaintiffs and explicitly states that "no certification of a class or collective action was obtained as to any claims asserted in the Amended Complaint." Ag. at 1. Because this case is not a class action, at least one of the dangers posed by an overbroad release – that it would bind class members who had no bargaining power concerning the settlement terms – is not present here. *See Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015) (Cott, M.J.) (approving broad general release in non-class FLSA settlement on condition that release be mutual). Under these circumstances, a general release of the kind proposed in this case will bring closure to both sides and is not unfair.

However, given the issues outlined above, the Court will not approve the Agreement as written. The parties are therefore directed to meet and confer regarding revisions to the Agreement, and to file a joint letter updating the Court on the status of settlement negotiations no later than **July 6, 2016**. If the parties revise the Agreement, they are directed to file their revised agreement with their joint letter, and to include an explanation and any documents necessary to support the proposed distribution of settlement funds among the plaintiffs.

Dated: New York, New York
June 22, 2016

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

10